1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CHUN YAT MA,                              CASE NO. C11-1797 MJP

11

               Petitioner,         ORDER GRANTING HABEAS
                             PETITION

12

     v.

13

NATHALIE ASHER, Seattle Field Office
Director, United States Immigration and

14

Customs Enforcement,

15

               Respondent.

16

17

       This matter comes before the Court on Petitioner's objections to Magistrate Judge

18

Donohue's Report and Recommendation that the Court deny habeas relief because Petitioner

19

failed to show that removal was unlikely to happen in the reasonably foreseeable future.  Having

20

reviewed the Report and Recommendation (Dkt. No. 14), the objections (Dkt. No. 17), the

21

response (Dkt. No. 18), and all related filings, the Court  GRANTS the habeas petition and

22

directs Petitioner's release from custody.

23

24

**Factual Background**

Before this Court is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Dkt. No. 14 at 1.)  The Petitioner, Chun Yat Ma, a detainee of United States Immigration and Customs Enforcement ("ICE"), is presently incarcerated at the Northwest Detention Center in Tacoma, Washington.  Based on Zadvydas v. Davis, 533 U.S. 678 (2001), Ma challenges his continued detention pending his removal to China.  (Dkt. No. 17 at 10.)

On March 18, 2005, Petitioner entered the United States without inspection near Peace Arch Park in Blaine, Washington.  (Dkt. No. 14 at 2.)  The United States Border Patrol apprehended him and determined that he did not have the documentation necessary to enter or remain in the United States legally.  (Id.)  The Border Patrol issued Petitioner a notice to appear, charging him as subject to removal for improperly entering the United States.  (Id.)

On April 8, 2005, an Immigration Judge ("IJ") granted Petitioner voluntary departure in lieu of removal with an alternate order of removal to Hong Kong.  (Dkt. No. 14 at 2.)  ICE released Petitioner from custody on April 12, 2005 after Petitioner posted a $20,000 voluntary departure bond.  (Id.)  On May 6, 2005, the IJ granted Petitioner's request for an extended departure time, requiring departure on or before June 7, 2005.  (Id.)  Petitioner forfeited the $20,000 bond when he failed to depart from the United States by that date.  (Id.)

Petitioner married Laing Xiao Long, a naturalized U.S. citizen, on May 18, 2005, and moved to reopen his case through counsel.  (Dkt. No. 14 at 2.)  The IJ denied Petitioner's motion to reopen on June 28, 2005 on the grounds that the marriage happened after Petitioner's initial removal date.  (Administrative Record ("AR") at L17.)  Petitioner's motion to reconsider was denied on July 8, 2005.  (Dkt. No. 14 at 2.)  The Board of Immigration Appeals dismissed Petitioner's appeal on March 2, 2006.  (Id.)

1    ICE arrested Petitioner on May 9, 2011.  (Dkt. No. 14 at 2.)  ICE conducted a post-order

2    custody review of Petitioner's case on August 8, 2011 and determined that he should remain in

3    custody as a flight risk beyond the mandatory 90-day removal period while ICE worked with the

4    Chinese government to secure his travel documents.  (AR at 83.)  ICE conducted another post-

5    order custody review of Petitioner's case on November 3, 2011, determining that, as a flight risk,

6    and because he was willing to forfeit his $20,000 bond, he should remain in custody beyond the

7    90-day removal period.  (Dkt. No. 14 at 3.)  ICE indicates that Petitioner's application for a

8    travel document remains delayed pending verification from Hong Kong authorities, "[h]owever,

9    there is no indication of when the issuance may occur."  (Id.)

10    On November 4, 2011, Petitioner filed a pro se petition for writ of habeas corpus,

11    pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his continued detention.  (Dkt. No.

12    14 at 1.)  On January 24, 2012, Magistrate Judge Donohue issued his Report and

13    Recommendation (Dkt. No. 14), and, following an extension, Petitioner filed his objections on

14    March 2, 2012 (Dkt. No. 17).

15                                        **Analysis**

16    I.    Jurisdiction

17    Federal district courts have jurisdiction over habeas petitions by aliens that challenge the

18    constitutionality of detention, rather than the final removal order itself.  28 U.S.C. § 2241(c)(3)

19    (2006); see Nadarajah v. Gonzalez, 443 F.3d 1069, 1075 (9th Cir. 2006) (recognizing that the

20    REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, does not eliminate habeas jurisdiction

21    over challenges to detention that are independent of challenges to removal).  Because Petitioner

22    challenges only the constitutionality of his continued detention, the Court has jurisdiction over

23    his habeas petition.

24

ORDER GRANTING HABEAS PETITION- 3

1  II.  <u>Applicable Law</u>

2       Title 8 U.S.C. Section 1231(a) governs the detention, release, and removal of an alien

3  with a final removal order.  <u>Zadvydas</u>, 533 U.S. at 683.  Pursuant to § 1231(a)(2), an alien must

4  be detained during the 90-day removal period established in § 1231(a)(1), which provides that:

5       "The removal period begins on the latest of the following:

6       (i)     The date the order of removal becomes administratively final.
7       (ii)    If the removal order is judicially reviewed and if a court orders a stay of the
               removal of the alien, the date of the court's final order.
8       (iii)   If the alien is detained or confined (except under an immigration process), the
               date the alien is released from custody or confinement."  8 U.S.C. §
9              1231(a)(1)(B).

10 Congress allows the Attorney General to authorize continued detention beyond the 90-day

11 removal period if the alien meets certain criteria, such as being unlikely to comply with the order

12 of removal.  8 U.S.C. § 1231(a)(6) (2006).  This includes the alien being a "significant flight

13 risk," which is determined by looking at several factors, including "history of escapes, failures to

14 appear for immigration or other proceedings, absence without leave from any halfway house or

15 sponsorship program, and other defaults . . . ."  8 C.F.R. § 241.4(f).

16      In <u>Zadvydas</u>, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) as not allowing

17 indefinite detention in order to avoid a "serious constitutional problem" with the Fifth

18 Amendment's Due Process Clause.  533 U.S. at 690.  The Supreme Court concluded that "once

19 removal is no longer reasonably foreseeable, continued detention is no longer authorized by

20 statute."  <u>Id.</u> at 699.  Accordingly, "the habeas court must ask whether the detention in question

21 exceeds a period reasonably necessary to secure removal.  It should measure reasonableness

22 primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the

23 moment of removal.  Thus, if removal is not reasonably foreseeable, the court should hold

24 continued detention unreasonable . . . ."  <u>Id.</u> Six months of detention is presumptively reasonable,

ORDER GRANTING HABEAS PETITION- 4

1  but after that point an alien can secure release by providing "good reason to believe that there is

2  no significant likelihood of removal in the reasonably foreseeable future," although the

3  Government can rebut such a showing.  Id. at 701.  As the period of postremoval confinement

4  grows, the reasonably foreseeable future shrinks.  Id.  However an alien can be kept in detention

5  until "there is no significant likelihood of removal in the reasonably foreseeable future."  Id.

6  III.    Application

7           a.   Calculating Zadvydas Time

8           Petitioner first argues that the time period for analyzing his detention under Zadvydas

9  begins from when his removal order became final, rather than the date of his detention.  The

10  Court disagrees.

11          Petitioner relies on a district court case from the Southern District of New York to argue

12  that the seven years between his removal order becoming final and his detention should be

13  included in a Zadvydas analysis.  (Dkt. No. 17 at 7, citing Farez-Espinoza v. Chertoff, 600 F.

14  Supp 2d. 488 (S.D.N.Y. 2009).)  In Farez-Espinoza the court held that the date the removal order

15  becomes final is the start date of the due process analysis from Zadvydas, even if the alien is not

16  in detention when the order becomes "final."  600 F. Supp. 2d at 499.  In that case, the court

17  focused on two factors: first, the alien did not receive notice of the removal order becoming final,

18  and second, the alien's address and whereabouts were known to the Government for fifteen

19  months before the Government detained her to pursue removal.  Id. at 500.  Here, Petitioner's

20  voluntary removal order provided notice that it would become a final removal order if he failed

21  to depart and he does not argue that the Government knew of his whereabouts but failed to detain

22  him.  (AR at 68).

23

24

1    Detention is the core issue in Zadvydas, and Petitioner was not detained until May 9,

2  2011.  533 U.S. at 699; (Dkt No. 14 at 1).  As noted by another district court, "it defies common

3  sense to suggest that Zadvydas time can run while a petitioner is not in custody."  Cheng Ke

4  Chen v. Holder, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011).  Adopting the reasoning of Farez-

5  Espinoza would prevent the Government, in some cases, from being able to detain an alien to

6  effectuate removal, which directly conflicts with the conclusion of the Supreme Court in

7  Zadvydas that detention is permissible until "there is no significant likelihood of removal in the

8  reasonably foreseeable future."  533 U.S. at 701.  The Court holds that the time between

9  Petitioner's removal order becoming final and his detention does not impact the due process

10  analysis established by Zadvydas.

11        b.  Length of Detention

12    Petitioner, in the alternative, argues that his detention from May 9, 2011 to the present, or

13  more than eleven months, is still sufficient to warrant release under Zadvydas.  The Court agrees.

14    Because the presumptively reasonably sixth month period of detention has elapsed,

15  Petitioner must show "good reason to believe that there is no significant likelihood of removal in

16  the reasonably foreseeable future."  Zadvydas, 533 U.S. at 701.  If he can do so, the burden shifts

17  to the Government to rebut Petitioner's showing.  Id.  The Ninth Circuit has provided further

18  guidance, holding that after the sixth month period has expired, a petitioner must provide some

19  evidence that he or she is unremovable "because the destination country will not accept him or

20  his removal is barred by our own laws."  Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir.

21  2008).

22    As a preliminary matter, the Court views Petitioner's claims through a pro se lens and

23  "afford[s] him the benefit of any doubt."  See Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir.

24

1985).  Petitioner relies primarily on the length of his detention as evidence that his removal to China is not reasonably foreseeable.  In assessing similar petitions, other district courts have focused on four factors when determining whether release is warranted: 1) cooperation of petitioner; 2) efforts by the Government to secure removal; 3) evidence that removal is likely; and 4) whether the time to secure removal is atypical.  See, e.g., Jiang v. Mukasey, No. 2:08-CV-773, 2009 WL 260378 (M.D. Fla. Feb. 3, 2009); Kacanic v. Elwood, No. 02-8019, 2002 WL 31520362 at *3–4 (E.D. Pa. Nov. 8, 2002); Lin Qin Dong v. Adducci, No. 11-11608, 2011 WL 2619063 at *3 (E.D. Mich. June 29, 2011); Nibkakhsh-Tali v. Mukasey, No. CV 07-1526, 2008 WL 2328354 (D. Ariz. June 4, 2008).

First, Petitioner has not delayed his own removal by refusing to cooperate with immigration officials.  A refusal to cooperate precludes a successful Zadvydas claim.  See, e.g., Jiang, 2009 WL 260378.  The Ninth Circuit, in addressing the issue of an obstructing alien, found that "[t]he risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own detention."  Pelich v. I.N.S., 329 F.3d 1057, 1060 (9th Cir. 2003).  Petitioner has complied with all ICE requests relating to securing his travel documents.  (AR at 32.)  Therefore he has not obstructed his own removal, favoring a finding that his detention alone indicates that removal is unlikely.

Second, the Government does not establish that it has engaged in continued efforts to secure Petitioner's removal to China.  Failure by the Government to make reasonable efforts to secure travel documents can indicate that removal is unlikely.  See, e.g., Kacanic, 2002 WL 31520362 at *3–4.  In the present case, after the 90-day removal period, but before Petitioner's November habeas petition, ICE contacted the Chinese consulate five times concerning Petitioner's travel documents.  (AR at 92.)  These steps are significantly outweighed by the

1   failure of the Government to provide any documentation of efforts since November, 2011. The

2   Government can hardly claim to be "doing everything in its power to effectuate removal as soon

3   as possible," when the most recent information concerning that effort is nearly six months old.

4   This failure, together with the fact that Petitioner has not been removed, weighs in favor of

5   finding that Petitioner's removal is unlikely and that release is warranted.

6        Third, the Government fails to provide a recent assessment that removal is likely. In <u>Lin</u>

7   <u>Qin Dong</u>, a recent, sworn affidavit by an ICE official that included a statement that removal was

8   likely was the "most important[]" factor in the district court's decision to dismiss a habeas

9   petition of an alien detained for nine months without removal to China. <u>Lin Qin Dong</u>, 2011 WL

10  2619063 at *3. Here, in October, 2011 and on two earlier occasions, ICE Officer Nancy Healey

11  determined that Petitioner's travel documents would "likely" be issued. (AR at 92.) However,

12  also in October, 2011, deportation officer Kathlyn Lawrence wrote that while she believed travel

13  documents would be issued, "there is no indication of when the issuance may occur." (AR at

14  85.) The conflicting statements concerning removal, together with the Government's failure to

15  provide a current affidavit or any sort of reliable evidence that removal is likely weighs in favor

16  of finding that Petitioner's removal is unlikely to happen in the reasonably foreseeable future.

17       Finally, Petitioner's removal to China significantly exceeds the typical removal period.

18  An undue delay in removal for an individual alien beyond the typical removal period would

19  naturally suggest that removal is unlikely. <u>See, e.g.</u>, <u>Nibkakhsh-Tali</u>, 2008 WL 2328354 at *7.

20  Here, neither party provides any data concerning how long removal of an alien to China takes.

21  In a recent district court case an ICE officer stated that it typically takes six to eight months to

22  secure travel documents to China. <u>Cheng Ke Chen</u>, 783 F. Supp. 2d at 1192. One court has held

23  that fifteen months of detention is sufficient for a Petitioner to show that acquiring travel

24

ORDER GRANTING HABEAS PETITION- 8

documents to China is unlikely to happen in the reasonably foreseeable future, even if the U.S. Government has attempted to secure them. Zhou v. Farquharson, 2001 U.S. Dist. Lexis 18239 at *4. Petitioner's detention exceeds the removal period by three months. As another district court has noted, "[p]ast success for others suggests there is some reason why the foreign government is refusing to accept the petitioner in question." Gui v. Ridge, 3-CV-031965 2004 WL 1920719 at *5. The administrative record does include two apparent reasons for delay—he is a Hong Kong resident and lacks his original passport. (AR at 92.) However, the Government fails to provide any information that might help the Court determine when the delay might become unreasonable and accordingly gives greater weight to the failure to remove Petitioner within the typical removal period for China.

Petitioner has shown that removal is unlikely to happen in the reasonably foreseeable future because he has not prevented his own removal, the Government does not show that it has undertaken good faith efforts to secure removal, the Government does not provide current evidence that removal is likely, and Petitioner has remained in detention beyond the typical removal period to China.

The burden therefore shifts to the Government to show that removal is likely. The Government however, provides no evidence from the past six months supporting an inference that deportation is imminent. The Government fails to show removal is likely to happen in the reasonably foreseeable future and therefore fails to rebut Petitioner's showing.

**Conclusion**

The court DECLINES to adopt Magistrate Judge Donohue's Report and Recommendation and GRANTS the habeas petition. And now, for the reasons set forth in the foregoing memorandum, it is hereby ordered that:

1.  The petition for a writ of habeas corpus is GRANTED.

2.  Petitioner Chun Yat Ma shall be released, subject to reasonable conditions of supervision as determined in accordance with 8 U.S.C. § 1231(a)(3) and applicable regulations.

3.  Within Five (5) days of the date of this Order, Respondents shall report to this Court the fact of Petitioner's release and any conditions imposed on such release.

4.  The Clerk of Court is directed to mark this matter CLOSED.


Dated this 24th day of April, 2012.



Marsha J. Pechman
United States District Judge